McBRIDE, Judge.
The plaintiff alleges that defendants, Anthony Gambino, Sr., and Anthony Gam-bino, Jr., as operators of the meat department of “All Nite Food Store,” are indebted unto him for the sum of $140.01. The averment is made that on July 22, 1956, plaintiff furnished certain labor and parts to the walk-in cooler and display case of defendants to the amount of $16.48, and that on August 26, 1956, he furnished labor and parts in the sum of $52.53, said two charges aggregating $69.01. Plaintiff further alleges that on July 13, 1956, he loaned the defendants a 1J4 h. p. motor and on August 13, 1956, loaned them a Westinghouse fan for use inside the walk-in cooler; that the consideration for said loan was that defendants would hire plaintiff to do certain repair work to their cooler; that defendants failed to give the repair job to plaintiff and, therefore, plaintiff is entitled to charge rental for the motor at the rate of $1 per day, or $66, and for the fan at the rate of 35^ per day, or $15, or a total rental charge of $81. Defendants are given credit for a *117 $10 payment on account of the labor and parts bills.
Plaintiff alleged he has a repairman’s privilege under LSA-R.S. 9:4501 on the walk-in cooler and display case, and prayed for a writ of provisional seizure directed to the Constable of the First City Court commanding him to seize and to take into his possession said equipment; plaintiff also prayed for a writ of sequestration directing the Constable to sequester and take into his possession the l]/2 h. p. motor and the Westinghouse fan which the petition alleges are still in the possession of defendants.
The court below ordered the issuance of the writs as prayed for, and evidently the provisional seizure was issued because we notice that defendants had the provisional seizure released upon their execution of a forthcoming bond in the sum of $110; the record does not disclose whether the writ of sequestration was ever issued or that the Constable took possession of the property sought to be levied on under said writ.
The defendant Anthony Gambino, Sr., filed answer in which he denied that he was indebted unto the plaintiff for any sums whatever; he averred specifically that he had no interest in the business and that the same was solely owned and operated by Gambino, Jr.
Gambino, Jr., answered denying any indebtedness tmto plaintiff and setting up as a defense that the work performed by plaintiff was defective and as a result of such defective work he suffered a loss in excess of $200 as a result of food spoilage. Gambino, Jr., then set up a recon-ventional demand in which he seeks to recover that sum from plaintiff. However, Gambino, Jr., abandoned the reconventional demand.
After a trial below plaintiff recovered judgment against Anthony Gambino, Sr., for $84.01, with recognition of plaintiff’s right of ownership and possession of the property seized under the writ of sequestration. This indicates convincingly that the amount of the judgment was an allowance for rental charged for the motor and fan; however, we notice plaintiff only claimed $81 for such rental. The judgment dismissed the suit insofar as Gambino, Jr., is concerned.
Anthony Gambino, Sr., has appealed from the judgment. Plaintiff did not take an appeal and, therefore, Anthony Gam-bino, Jr., is not before the court and we are only concerned with plaintiff’s claims as against Anthony Gambino, Sr. Plaintiff has answered the appeal and the nature of said answer will be the subject of discussion hereafter.
Gambino, Sr., claims that he had no interest in or connection with the meat department of the food store, and the evidence tends to bear out this contention. The All Nite Food Store was a business enterprise owned and operated by one De-Peco, with whom Gambino, Jr., entered into an agreement whereby the latter would operate the meat department and all profits accruing from such operation were to be shared equally between Gambino, Jr., and DePeco. While Gambino, Sr., had no proprietary interest in the business or the equipment therein, he admits he was interested in helping his son get a start in business. The record reveals that he went so far in his zeal to help his son as to lead plaintiff to believe that he, Gambino, Sr., owned the business and that whatever work the plaintiff was to do on the walk-in cooler and equipment would be chargeable to him and he would pay the bills. The walk-in cooler and display case were very old models and plaintiff testified that it was difficult to obtain parts in connection with keeping them in service. The equipment was almost constantly in need of repairs, and when young Gambino entered into the venture with DePeco, an agreement was made between plaintiff and Gambino, Sr., that plaintiff would service the walk-in cooler and a display case for $4 per month. *118 The nature of the contract was that plaintiff would keep the cooler and display case in good operating condition for said monthly charge, and if repairs were necessary, he would furnish the same and charge Gambino, Sr., only for the amount of parts installed but not for his labor.
Plaintiff was called upon under the agreement to do other work on the equipment on dates prior to the dates of the two bills upon which this suit is based, and Gambino, Sr., admits that he paid these prior bills himself. Plaintiff stated he was under the impression, from his dealings with Gam-bino, Sr., that the latter was the owner of the business and that the son, Gambino, Jr., had been placed in -the establishment by his father as manager. Plaintiff claims he had no contract with Gambino, Jr., at all, as all his dealings were with the boy’s father, and it was necessary “to get an o. k. on the job” from Gambino, Sr., when work was to be done.
On his cross-examination Gambino, Sr., testified as follows :
“Q. Did you not state, * * * that you made a contract or an agreement with Mr. Thompson to do the maintenance work on this box and any other work necessary to keep it going? A. That’s right and to bring me the bill when he got through and I would pay for it. I said, ‘bring me the bill when you get through and I will pay you for it.’ ”
Appellant is legally obligated to plaintiff for the amount of the two bills although he in fact was not the owner of or a partner in the All Nite Food Store. The liability springs from the fact that in his dealings with plaintiff appellant’s actions and conduct led plaintiff to believe he was the owner and that plaintiff’s services were being rendered to him and he would pay the bills therefor. Gambino, Sr., personally settled several prior bills rendered by plaintiff and he never at any time apprised plaintiff that he was paying them for his son’s account. He at all times appeared to plaintiff as being the proprietor of the business, and he is es-topped from now setting up as a defense to this suit that he has no interest in the business and is not liable for the bills, all to the detriment of plaintiff who dealt with him in good faith.
The trial judge made an allowance for rental charges for the motor and fan, but Gambino, Sr., is not liable therefor. It is true plaintiff placed the two articles in the establishment on a loan basis, and it is likewise true that he did not get the expected order from Gambino, Sr., for the repair work, but we think that Gam-bino, Sr., was within his rights in refusing to give the job to plaintiff, for the simple reason Gambino, Sr., was able to secure a much lower bid from another repairman. There is no showing that plaintiff ever informed or notified Gambino, Sr., that there would be a rental charge in the event he was not hired to do the repair work, and moreover there is no evidence in the record showing that the amount plaintiff seeks to recover represents a reasonable charge or is customary in such cases.
The record shows that on the one occasion plaintiff attempted to remove the motor and fan he was prevented from doing so by the actions of young Gambino. At the time plaintiff never mentioned there would be a rental charge. We do not know what has become of the loaned articles and the record is silent as to who has possession of them at the present time.
Plaintiff is entitled to recover from Gam-bino, Sr., the amount of the repair charges of July 22 and August 26, 1956. The work done on the earlier date was the recharging of the refrigeration system with Freon gas and the installation of four feet of tubing for $16, which together with sales taxes totaled $16.48. On the latter date plaintiff installed an oil dehydrator on the cooling unit for the price of $38.50, but *119 we notice that he also made a charge of $12.50 for labor, which under the contract should not have been made. The service agreement contemplated there were to he no labor charges as plaintiff obligated himself, in view of the monthly payments, to charge only for parts supplied, and therefore the charge should he $38.50, plus $1.16, or a total of $39.66.
Gambino, Sr.-, testified plaintiff’s work was defective, but he evidently refers to the' prior work which he has already paid and with which we need not concern ourselves. It does not appear that plaintiff was negligent or that there were any defects in the work represented by the bills sued upon. If the work did not materially benefit the appliances, that circumstance can be attributed to their condition as we notice Fredericks, who was a defense witness,, testified that a dehydrator, depending on the moisture in the system, sometimes has to be changed as much as two or three times a week.
After carefully considering the testimony, we are of the opinion that Gam-' bino, Sr., is indebted unto plaintiff for the sum of $56.14, subject to a credit of $10, or a net sum of $46.14.
The trial judge erred in maintain--ing the writ of sequestration, as it does not appear from the record that such writ was ever issued or that the Constable ever, levied on the articles of which plaintiff claimed to be the owner.
Plaintiff filed an answer asking that the amount of the judgment be increased to the sum of $140.01 and prays for “all such additional relief as law, equity or the nature of the case may permit.” We have allowed plaintiff $46.14 but we cannot recognize a lien and privilege on the equipment nor maintain the writ of provisional seizure under which the walk-in cooler and display case were seized. This for the reason that appellee in answering the appeal did not specifically pray that the judgment be amended so as to recognize the lien and privilege or maintain the writ. It was incumbent upon the appellee to set forth in his answer to the appeal exactly what changes he desired in the judgment from which the appeal was taken. In the case of Graff v. Fazende, 172 La. 441, 134 So. 387, the Supreme Court held that the answer to the appeal, by the operation of law, limits the Court to the making of only the requested changes in the judgment, citing C.P. art. 888. That was a divorce suit which had been dismissed in the trial court, the plaintiff appealing from the judgment. The appellee answered the appeal by asking that the judgment be amended so as to allow her demand in reconvention for a separation from bed and board. The Court amended the judgment in the appellee’s favor by granting the separation from bed and board which was the only change defendant had asked to be made in her answer to the appeal. The Court went on to say that under the answer merely requesting that the appellee have judgment on the reconventional demand, it could not render a decree looking toward the settlement of the community and that the appel-lee would have to resort to other proceedings for this relief.
An analogous situation exists here. The plaintiff is entitled to have a moneyed judgment against the defendant for his two bills, but in the absence of a request for an amendment in the judgment maintaining the writ of provisional seizure, we cannot grant such relief. If it is a principle of law that in the court of origin a prayer for general and equitable relief authorizes all ordinary decrees which the pleadings and evidence may justify, such rule has no application respecting an answer to an appeal. Our opinion is that the ap-pellee must in his answer set forth precisely the changes in the judgment which he seeks, and the appellate court’s power to amend the judgment in appellee’s favor is circumscribed by the answer to the appeal.
*120 The appellee also prayed for damages for frivolous appeal, but, of course, such cannot be allowed.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment insofar as it recognizes plaintiff’s right of ownership and possession of the property sequestered be and the same is hereby reversed, and the judgment is amended so as to reduce the amount thereof to $46.14, and to dismiss all other claims of plaintiff, and as thus amended and in all other respects the judgment is affirmed. Plaintiff is to pay the costs of appeal.
Reversed in part, amended and affirmed in part.